**HOLLSTEIN KEATING CATTELL JOHNSON & GOLDSTEIN P.C.**
BY: **James W. Johnson**
Willow Ridge Executive Office Park
750 Route 73 South – Suite 301
Marlton, NJ 08053
(856) 810-8860
ATTORNEY FOR **ACADEMIC INVESTMENT GROUP INC**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Academic Investment Group Inc. and Clifford Bruce Sannino<br><br>Plaintiffs<br>v.<br>Captain Jack Moran, and Guardian Marine, Inc. d/b/a and/or Sea Tow Cape May and/or Sea Tow Sea Isle City/Cape May<br><br>Defendants | CIVIL ACTION NO: |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, by their attorneys Hollstein Keating Cattell Johnson & Goldstein, P.C., complaining of the Defendant, alleges upon knowledge with respect to himself and his own acts and upon information and belief as to all other matters as follows:

1. This is a case of Admiralty and Maritime jurisdiction and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333 and venue is proper in this District and vicinage.

{10247.00131:YFE6164}

2. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 (Federal Declaratory Judgment Act) for the purpose of determining a question of actual controversy between the parties as hereinafter more fully appears.

3. At all times material hereto, Plaintiff Academic Investment Group Inc. was a corporation existing under the laws of the State of Florida with its principal place of business at 10416 West McNab Road, Tamarac, Florida and at all times hereto was the agent and attorney in fact for the owner of the motor yacht MY SERENITY, Boca Raton Charter School, Inc, 269 NE 14th Street, Boca Raton, FL.

4. At all times material hereto, Plaintiff Clifford Bruce Sannino was the master of the MY SERENITY and resided in Edgewater, Maryland. Captain Sannino was hired by Academic Investment Group Inc. to deliver the vessel.

5. At all times relevant, defendant Guardian Marine Inc. was a corporation organized under the laws of the State of Florida with a business address of 1015 Shunpike Road, Cape May, NJ 08204. At all times materials hereto, Guardian Marine Inc. did business as Sea Tow Cape May and/or Sea Tow, Isle City/Cape May. Defendant Jack Moran was at all times material hereto the President of Guardian Marine Inc.

6. Defendants, among other things, generally provides towage and salvage services in this district and on the waters of this district.

7. The vessel SERENITY departed Twin Lights Marina in Highlands, NJ at 7:19 am on December 31, 2010 and cleared Sandy Hook at 7:40 am.

8. At about 2:00 pm on December 31, 2010, just off Herford Inlet, north of Cape May, NJ, the aft emergency bilge pump alarm sounded and Captain Sannino investigated and found that the starboard shaft seal had come apart and water was flooding in and the vessel's

bilge pumps could not keep up with the leak. The water was about a foot deep under the engines and had not yet reached the starters. Captain Sannino stopped the engines and tried to make a repair to attempt to slow the flow but he was unsuccessful. At that time he called Sea Tow but could not raise Sea Tow on the radio so he instead called the U.S. Coast Guard at Cape May at about 1:15 p.m. The Coast Guard relayed Captain Sannino's request to Sea Tow and eventually Captain Sannino spoke with Sea Tow. Since the vessel was taking on water, the Coast Guard dispatched a search and rescue to meet the SERENITY.

9. The Coast Guard vessel was the first to arrive on scene at about 1:40 p.m. and three petty officers boarded with a gasoline powered pump and de-watered the yacht. About 20 minutes later, the Sea Tow vessel arrived and wanted to take us in tow. Captain Sannino told the captain of the Sea Tow boat that the SERENITY could make way into port without assistance as the SERENITY's own bilge pump could control any leakage into the vessel as long as the starboard shaft (which was leaking) was seized, or prevented from rotating while the vessel moved through the water. Captain Sannino was able to obtain a piece of light line from the Sea Tow captain and told the Sea Tow captain how to seize the shaft of the SERENITY which would then allow the SERENITY to motor into port on the port engine alone and the SERENITY's bilge pumps would control the inflow of leakage.

10. When the shaft was seized as discussed above, the Sea Tow vessel proceeded into Cape May while the USCG vessel, escorting alongside the SERENITY, also proceeded to Cape May to the Canyon Club Marina, arriving there at about 4:15 p.m. on December 10, 2010.

11. On the advice of the Sea Tow captain, Captain Sannino radioed ahead to the service manager for the Canyon Club Marina in Cape May and the manager agreed to meet Captain Sannino at the travel lift well when he arrived.

12. After the SERENITY was secured at the Canyon Club and out of the water, Captain Sannino signed a Service Agreement with Sea Tow for its services in the amount of approximately $400.00 but he is not sure of the exact amount. Captain Sannino does not have a copy of the Service Agreement. Captain Sannino knows the difference between a Salvage Agreement and a Service Agreement and he never signed any form of any salvage agreement relating to the events described in this Complaint.

13. Defendants claim that Plaintiff Bruce Sannino signed a Salvage Agreement.

14. Defendants further claim that they are entitled to a contract salvage award of $12,279.05. See Exhibit "1" attached hereto by way of reference.

15. Plaintiff Sannino did not sign the purported salvage agreement. There is a printed name on the bottom of the under the heading "For: VESSEL, CARGO and PROPERTY" which appears to be "Bruce Sannino". Plaintiff Sannino did not print that name. Above the printed name "Bruce Sannino" under that same heading there is what appears to be one letter, a capital "B", above a line which has underneath it "(authorized signature)". Plaintiff Bruce Sannino did not make or write that letter "B" to represent his signature.

16. Plaintiffs claim that someone intentionally and without authorization printed the name "Bruce Sannino" on the Salvage Agreement as referenced in the preceding paragraph and also printed the letter "B" on the Salvage Agreement as referenced in the preceding paragraph.

17. Plaintiff Sannino claims that the allegation that he signed the Salvage Agreement is false and not truthful.

18. Plaintiffs claim that the alleged Salvage Agreement is a forgery and without legal effect.

19. Defendants, through their attorney, have demanded Salvage Arbitration based upon a forged and fraudulent Salvage Agreement which was not signed by Plaintiffs. See Exhibit "2" attached hereto by way of reference.

20. Therefore there exists an actual controversy between the parties within the jurisdiction of this Court involving the rights and liabilities of the parties for alleged services to the vessel SERENITY, including the existence of a valid Salvage Agreement and which controversy may be determined by a judgment of this Court.

WHEREFORE, the Plaintiffs prays as follows:

1. That the Court determine and adjudicate the rights and liabilities of the parties with respect to any services rendered to MY SERENITY on 12/31/10;

2. That the Court find and declare that the Plaintiffs did not execute claimed Salvage Agreement, the instrument attached hereto as Exhibit "1" and that said instrument is, therefore, null and void;

3. That the Court find and declare that the Defendants are not entitled to an award of salvage and not entitled to any type of compensation for its alleged services rendered to the MY SERENITY on December 31, 2010;

4. That the Court award Plaintiffs the costs and disbursements of this action; and

5. That the Court award Plaintiffs such other and further relief as in law and justice they may be entitled to receive, including punitive damages.

HOLLSTEIN KEATING CATTELL
JOHNSON & GOLDSTEIN, P.C.


s/James W. Johnson  (JJ 4811)
James W. Johnson
Willow Ridge Executive Office Park
750 Route 73 South - Suite 301
Marlton, NJ  08053
Phone: (856) 810-8860
Fax:    (856) 810-8861
EMail:jjohnson@hollsteinkeating.com
Attorney for Academic Investment Group, Inc. and Clifford Bruce Sannino

# EXHIBIT "1"

Case 1:11-cv-01552-NLH -AMD   Document 1   Filed 03/18/11   Page 6 of 13 PageID: 6

# FAX

Guardian Marine Inc.
Sea Tow Cape May
PO Box 2222
Cape May, NJ 08204
609-263-2222
609-846-7750

**Attention:** Academic Investment Group

**Fax Number:** 954-724-5709

Cathleen,

Attached are the MARSALV Agreement and the invoice for the salvage of the M/V "My Serenity". The salvage report will be sent upon completion. Please advise how you would like to proceed.

Thank you,

Capt. Jack Moran
Sea Tow Cape May

The Society of Maritime Arbitrators, Inc.
# U.S. OPEN FORM SALVAGE AGREEMENT
Codename - MARSALV©

This **SALVAGE AGREEMENT** ("The Agreement"), between Academic Investment Group/Bruce Sannir Master and/or Owner and/or Underwriter of the vessel "My Serenity" 45' Sea Ray ("The Vessel") and Sea Tow Cape May ("The Salvor"), is for salvage services rendered or to be rendered to the Vessel, her cargo and other property currently lying at or near 39°02.6/074°44.0, under the following terms and conditions:

**FIRST:** The Salvor shall use his best endeavors to salve the Vessel, her cargo and other property and deliver same safely afloat, hauled or drydocked at or near Canyon Club at which place and time the Salvors services will terminate unless otherwise mutually agreed.

**SECOND:** The Master and crew of the Vessel agree to lend their aid and assistance to the Salvor, who shall be entitled, free of expense, to the reasonable use of the Vessel's equipment.

**THIRD:** The Salvor's services are to be performed on the following basis (check and initial):

☒ **No Cure-No Pay** (Compensation to be conditioned upon successful salvage of the Vessel and/or her cargo and/or other property. In such case, the Salvors compensation shall be pursuant to the criteria and other provisions of Article 13 of the 1989 International Convention on Salvage shown on the reverse of this Agreement).

☐ **No Cure-No Pay, Fixed Fee $**_____

☐ **Per Diem/Hourly at** $_____ per day/hour pro rata

☐ **Other**_____

**FOURTH:** Notwithstanding the election(s) made in Paragraph THIRD, the Salvor shall in any event be entitled to compensation for actions he takes to prevent or minimize damage to the environment, pursuant to Articles 13 and 14 of the 1989 International Convention on Salvage shown on the reverse of this Agreement.

**FIFTH:** The Salvor shall have a lien upon the Vessel, her cargo and other property for services rendered pursuant to Paragraphs THIRD and FOURTH, and his statement for services rendered shall be submitted as promptly as possible after completion or termination of such services. In lieu of arrest or attachment of the Vessel the Salvor may demand reasonable security for such services from the Vessel and cargo interests as a condition for releasing same.

**SIXTH:** This Agreement shall be governed by and construed in accordance with the Federal Maritime Law of the United States. Any dispute arising out of this Agreement shall be referred to arbitration in the United States in accordance with the applicable Arbitration Rules of the Society of Maritime Arbitrators, Inc. The Arbitrator(s) shall be familiar with maritime salvage. Any award made hereunder may include interest, attorney's fees and costs, and shaft be final and binding. For the purpose of enforcement the Award may be entered for judgment in any court of competent jurisdiction.

Dated this 31 day of December, 2010

For: **SALVOR**
_____
(authorized signature)
Jack Moran
(print name and title)

For: **VESSEL, CARGO and PROPERTY**
_____
(authorized signature)
Bruce Sannir
(print name and title)
Owner Representative

White: Salvor • Yellow: Master/Owner • Pink: Underwriter
©1996 Society of Maritime Arbitrators, Inc. Rev. 1999

Guardian Marine Inc. Sea Tow Cape May

PO Box 2222
Cape May, NJ 08204

# Invoice

| Date | Invoice # |
|---|---|
| 1/4/2011 | 10 |

**Bill To**
Academic Investment Group
10416 West McNab Rd
Tamarac, FL 33321
954-724-5701

| Terms | Captain | Vessel | Member Number |
|---|---|---|---|
| Due on receipt | JMM | Cape May | N/A |

| Description | Qty | Rate | Amount |
|---|---|---|---|
| Salvage 48' Motor Vessel "My Serenity" in position 39-02.6, 074-44.0 | 1 | 11,475.75 | 11,475.75T |

Tax ID # 76-0804965

| | |
|---|---|
| **Subtotal** | $11,475.75 |
| **Sales Tax (7.0%)** | $803.30 |
| **Total** | $12,279.05 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $12,279.05 |

| Phone # | Fax # |
|---|---|
| 609-263-2222 | 609-846-7750 |

Case 1:11-cv-01552-NLH -AMD   Document 1   Filed 03/18/11   Page 10 of 13 PageID: 10

# EXHIBIT "2"

# LAW OFFICE OF ARNOLD J. CESTARI, JR.
P.O. BOX 821
MATTAPOISETT, MA 02739

Arnold J. Cestari, Jr.
Annmarie Gould

Telephone: 508-758-3331
Facsimile: 508-758-3300
e-mail: cestariandco@comcast.net

March 8, 2011

VIA E-MAIL: JJOHNSON@HOLLSTEINKEATING.COM

Mr. James W. Johnson, Esquire
Hollestein Keating Cattel Johnson & Goldstein, P.C.
Eight Penn Center, Suite 2000
1628 John F. Kennedy Boulevard
Philadelphia, PA 19103

RE: Salvor: Sea Tow Cape May
Owner/Vessel: Academic Investment Group, Inc./*SERENITY*
Demand for Salvage Arbitration

Dear Mr. Johnson:

In follow up to our telephone conversation regarding this matter, recognizing a dispute exists regarding the services provided per the terms of the MARSALV Agreement signed by Captain Bruce Sannino, please accept this as Sea Tow's demand for salvage arbitration. Specifically, in accordance with paragraph Sixth of the US Open Form Salvage Agreement, a copy of which is attached, Sea Tow hereby refers this matter to the Society of Maritime Arbitrators, Inc. for resolution in accordance with their Salvage Rules. The Salvage Rules and a list of SMA Arbitrators can be found at smany.org. Claimant selects Austin Dooley to serve as sole arbitrator. We look forward to hearing from you soon regarding selection of an arbitrator and the schedule according to which this matter will be resolved per the SMA Rules.

Very truly yours,

Arnold J. Cestari, Jr.

Attachment - US Open Form Salvage Agreement

xc: Owner - Academic Investment Group, via fax for notice purposes

The Society of Maritime Arbitrators, Inc.
## U.S. OPEN FORM SALVAGE AGREEMENT
Codename - MARSALVO

This **SALVAGE AGREEMENT** ("The Agreement"), between _Academic Investment Group/Bruce Sannin_ Master and/or Owner and/or Underwriter of the vessel _"My Serenity" 45' Sea Ray_ ("The Vessel") and _SeaTow Cape May_ ("The Salvor"), is for salvage services rendered or to be rendered to the Vessel, her cargo and other property currently lying at or near _39°02.6/074°41.0_ , under the following terms and conditions:

**FIRST:** The Salvor shall use his best endeavors to salve the Vessel, her cargo and other property and deliver same safely afloat, hauled or drydocked at or near _Canyon Club_ at which place and time the Salvors services will terminate unless otherwise mutually agreed.

**SECOND:** The Master and crew of the Vessel agree to lend their aid and assistance to the Salvor, who shall be entitled, free of expense, to the reasonable use of the Vessel's equipment.

**THIRD:** The Salvor's services are to be performed on the following basis (check and initial):

[X] **No Cure-No Pay** (Compensation to be conditioned upon successful salvage of the Vessel and/or her cargo and/or other property. In such case, the Salvors compensation shall be pursuant to the criteria and other provisions of Article 13 of the 1989 International Convention on Salvage shown on the reverse of this Agreement).

[ ] **No Cure-No Pay, Fixed Fee $**_____

[ ] **Per Diem/Hourly at**   $_____ per day/hour pro rata

[ ] **Other**_____

**FOURTH:** Notwithstanding the election(s) made in Paragraph THIRD, the Salvor shall in any event be entitled to compensation for actions he takes to prevent or minimize damage to the environment, pursuant to Articles 13 and 14 of the 1989 International Convention on Salvage shown on the reverse of this Agreement.

**FIFTH:** The Salvor shall have a lien upon the Vessel, her cargo and other property for services rendered pursuant to Paragraphs THIRD and FOURTH, and his statement for services rendered shall be submitted as promptly as possible after completion or termination of such services. In lieu of arrest or attachment of the Vessel the Salvor may demand reasonable security for such services from the Vessel and cargo interests as a condition for releasing same.

**SIXTH:** This Agreement shall be governed by and construed in accordance with the Federal Maritime Law of the United States. Any dispute arising out of this Agreement shall be referred to arbitration in the United States in accordance with the applicable Arbitration Rules of the Society of Maritime Arbitrators, Inc. The Arbitrator(s) shall be familiar with maritime salvage. Any award made hereunder may include interest, attorney's fees and costs, and shall be final and binding. For the purpose of enforcement the Award may be entered for judgment in any court of competent jurisdiction.

Dated this _31_ day of _December_, 20_10_

For: **SALVOR**                                         For: **VESSEL, CARGO and PROPERTY**

_[signature]_                                           X _[signature]_
(authorized signature)                                  (authorized signature)

_Jack Moran_                                            X _Bruce SANNIN_
(print name and title)                                  (print name and title)
                                                        _Owner Representative_

White: Salvor • Yellow: Master/Owner • Pink: Underwriter       ©1996 Society of Maritime Arbitrators, Inc. Rev. 1999

# INTERNATIONAL CONVENTION ON SALVAGE, 1989

## Article 13

### Criteria for Fixing the Reward

1. The reward shall be fixed with a view to encouraging salvage operations, taking into account the following criteria without regard to the order in which they are presented below:
   (a) the salved value of the vessel and other property;
   (b) the skill and efforts of the salvors in preventing or minimizing damage to the environment;
   (c) the measure of success obtained by the salvor;
   (d) the nature and degree of the danger
   (e) the skill and efforts of the salvors in salving the vessel, other property and life;
   (f) the time used and expenses and losses incurred by the salvors;
   (g) the risk of liability and other risks run by the salvors or their equipment;
   (h) the promptness of the services rendered;
   (i) the availability and use of vessels or other equipment intended for salvage operations;
   (j) the state of readiness and efficiency of the salvor's equipment and the value thereof.

2. Payment of a reward fixed according to paragraph 1 shall be made by all of the vessel and other property interests in proportion to their respective salved values. However, a State Party may in its national law provide that the payment of a reward has to be made by one of these interests, subject to a right of recourse of this interest against the other interests for their respective shares. Nothing in this article shall prevent any right of defence.

3. The rewards, exclusive of any interest and recoverable legal costs that may be payable thereon, shall not exceed the salved value of the vessel and other property.

## Article 14

### Special Compensation

1. If the salvor has carried out salvage operations in respect of a vessel which by itself or its cargo threatened damage to the environment and has failed to earn a reward under article 13 at least equivalent to the special compensation assessable in accordance with this article, he shall be entitled to special compensation from the owner of that vessel equivalent to his expenses as herein defined.

2. If, in the circumstances set out in paragraph 1, the salvor by his salvage operations has prevented or minimized damage to the environment, the special compensation payable by the owner to the salvor under paragraph 1 may be increased up to a maximum of 30% of the expenses incurred by the salvor. However, the tribunal, if it deems it fair and just to do so and bearing in mind the relevant criteria set out in article 13, paragraph 1, may increase such special compensation further, but in no event shall the total increase be more than 100% of the expenses incurred by the salvor.

3. Salvor's expenses for the purpose of paragraphs 1 and 2 means the out-of-pocket expenses reasonably incurred by the salvor in the salvage operation and a fair rate for equipment and personnel actually and reasonably used in the salvage operation, taking into consideration the criteria set out in article 13, paragraph 1(h), (i) and (j).

4. The total special compensation under this article shall be paid only if and to the extent that such compensation is greater than any reward recoverable by the salvor under article 13.

5. If the salvor has been negligent and has thereby failed to prevent or minimize damage to the environment, he may be deprived of the whole or part of any special compensation due under this article.

6. Nothing in this article shall affect any right of recourse on the part of the owner of the vessel.